UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMERICA BANK,
a Texas banking association,

        Plaintiff,                CASE NUMBER:  09-13497
                                    HONORABLE VICTORIA A. ROBERTS

v.

MERRIWEATHER ROAD, LTD., a Michigan
partnership, NEW METHOD STEEL STAMPS, INC.,
a Michigan corporation, CHARLES D. L. BROWN, a
Michigan citizen, MARY E. BROWN, a Michigan
citizen, COUNTRYWIDE HOME LOANS, INC., a
New York corporation, MERS, INC., a Delaware
corporation, C. D. K. BROWN, a Michigan citizen,
and MARY L. BROWN, a Michigan citizen,

        Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

**I.     INTRODUCTION**

Comerica Bank ("Comerica") sued several Michigan citizens for breach of
contract pertaining to several loan and security agreements.  Comerica invoked the
Court's original jurisdiction over civil actions between citizens of different states where
the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).

Before the Court are motions to dismiss filed by Defendants C. D. K. Brown,
Mary L. Brown, Mary E. Brown, New Method Steel Stamps, Inc., Merriweather Road,
Ltd. and Charles D. L. Brown, (Dkt. ##4, 6, 10, 18).  Under Fed. R. Civ. P. 12(b)(1),
Defendants argue the Court lacks subject matter jurisdiction because Comerica is a
Michigan citizen.  The matter is fully briefed and the Court concludes that a hearing is
unnecessary.  *See* E.D. Mich. R. 7.1(e)(2).

For the reasons stated, Defendants' motions are **DENIED**.

## II.    APPLICABLE LAW

> In response to a Rule 12(b)(1) motion, the plaintiff bears the burden of
> proving jurisdiction.  [*Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223,
> 225 (6th Cir. 2007)].  Furthermore, "unlike Rule 12(b)(6) analysis, under
> which the existence of genuine issues of material fact warrants denial of
> the motion to dismiss, 'the court is empowered to resolve factual disputes
> when subject matter jurisdiction is challenged.'"  *Id.* (*quoting* [*Moir v.
> Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990))].

*EEOC v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th

Cir. 2010).

The diversity jurisdiction statute gives federal district courts original jurisdiction

over civil actions "between . . . citizens of different States" where the amount in

controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  Jurisdictional diversity prohibits

that any plaintiff share a common citizenship with a defendant at the time the lawsuit is

filed. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *V&M Star, LP v. Centimark

Corp.*, 596 F.3d 354, 355 (6th Cir. 2010).  "Jurisdiction turns on the facts existing at the

time the suit commenced."  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 459 n.1 (1980)

(*citing Louisville, New Albany & Chicago Ry. Co. v. Louisville Trust Co.*, 174 U.S. 552,

556 (1899)).

For diversity purposes, a corporation is deemed to be "a citizen of any State by

which it has been incorporated and of the State where it has its principal place of

business."  § 1332(c)(1).  Until this year, courts were divided on how to interpret this

phrase.  Many courts applied the so-called "nerve-center test," which likens the principal

place of business to the corporation's "brain," the place from which it "radiates out to its

constituent parts and from which its officers direct, control and coordinate all activities

without regard to locale, in the furtherance of the corporate objective." *Scot Typewriter*

*Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959). Other courts applied,

the "business-activities" test, which emphasizes the place in which the bulk of corporate

activity takes place, based on various factors such as where the company's production

facilities are located, where its employees reside, or where it generates the most

revenue. *See Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 854 (3d Cir. 1960).

In *Gafford v. Gen. Elec. Co.*, 997 F.2d 150 (6th Cir. 1993), the Sixth Circuit

adopted the "total-activity test," which is actually a hybrid of the nerve-center and

business-activities tests. This approach considers all relevant factors and weighs them

in light of the facts of each case, *id.* at 163, in an attempt to determine what some

describe as the corporation's "center of gravity." 13F C. Wright, A. Miller, & E. Cooper,

*Federal Practice and Procedure* § 3625, at 100 (3d ed. 2009).

*Gafford* is no longer good law. In *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192,

175 L. Ed. 2d 1029, 1041 (2010), the Supreme Court discarded the business-activities

and total-activity tests in favor of the nerve-center test. Under *Hertz*, "the place where a

corporation's officers direct, control, and coordinate the corporation's activities"

constitutes the principal place of business. *Id.* However, the Court applies the total-

activity test set forth in *Gafford*, since it was the prevailing law when Comerica filed this

case.

## III.    ANALYSIS

By affidavit from one of its vice presidents, Comerica declares that its

headquarters, as well as those of its corporate parent, Comerica Inc., are located in

Dallas, Texas, and that most of its executive management, including its chairman and chief executive officer, and at least half of its senior leadership team, is housed there as well. (Affidavit of Jon W. Bilstrom, Executive Vice-President, Ex. A ¶¶ 8, 11.) The exact number of senior leadership team members located in Texas is unclear. According to Mr. Bilstrom's affidavit, 10 out of 16 live in Texas. However, Comerica's website indicates that two members identified by Mr. Bilstrom have since left the Board. *See* http://www.comericabank.com > About Comerica > Company Overview > Senior Leadership Team (last visited May 18, 2010).

Comerica states that it maintains over 500 banking facilities in 18 states and three foreign locations. (*Id.* at ¶ 5.) The company operates what it describes as "regional offices" in Michigan, Texas and California, but emphasizes that its Dallas headquarters maintains executive control over the corporation and makes corporate policy decisions. (*Id.* at ¶¶ 10-12.) Lastly, Comerica asserts that several corporate activities, including control over administrative and business decisions, formulation and administration of human resource and hiring policies, and most SEC and regulatory filings, are handled in Texas. (*Id.* at ¶ 13.)

The preceding facts establish conclusively that Comerica's Dallas headquarters is the corporation's actual center of direction, control, and coordination, i.e., its nerve center. Under *Hertz*, the Court's analysis would end there. However, the nerve center is only half of the total-activity test; the other half is where the corporation's actual business activities are located.

Defendants supply a corporate statement which Comerica uses to present itself at investor conferences and "roadshows." (Mot. Ex. D.) According to this document,

Comerica is one of the top 20 bank holding companies in the United States, with major markets in Michigan, California, Florida, Texas and Arizona. (*Id.* at 3.) As of June 2009, Comerica had 233 banking centers in Michigan, slightly over half its total of 441, with the remainder divided between Texas, Arizona, California and Florida. (*Id.* at 48.)

Defendants also rely on a Form 10-Q Quarterly Report Pursuant to the Securities Exchange Act of 1934, filed in June 2009 by Comerica's corporate parent, Comerica Inc. (Mot. Ex. F.) This report divides Comerica, Inc.'s domestic activities between the Midwest, Western, Florida, Texas, and other markets. The Midwest is the largest; it represents 49.8% of Comerica Inc.'s net-interest income and 42.4% of its non-interest income. (*Id.* at 38.) The report states that Michigan represents a "significant majority" of the Midwest market, which includes Ohio and Illinois. (*Id.* at 37.) Defendants claim that Form 10-Q shows that Comerica's business activities remain centered in Michigan. However, Form 10-Q only identifies Comerica Inc., and not Comerica Bank. Therefore, it is impossible to discern what amount of Comerica, Inc.'s 2009 income was generated by Comerica Bank, and where that income originated.

Defendants also make the following, unconvincing arguments. First, Defendants cite Federal Reserve records according to which there are 50 banking-related entities under the Comerica, Inc., parent, 39 of which are located in Michigan. (Mot. Ex. J.) These same records indicate that Comerica, Inc. and Comerica Bank are located in Dallas, Texas. Furthermore, these records do not show whether these entities respond to Comerica Bank or Comerica Inc.

Defendants state that, according to records of the Comptroller of Public Accounts for the State of Texas, Comerica is domiciled in Michigan. Comerica responds that this

is just a mailing address, and does not mean that it is a Michigan citizen.  The Court

agrees.

Defendants also assert that, in an unrelated action before this Court, Comerica

answered the plaintiff's complaint by stating that it is "a bank chartered by the State of

Michigan and which conducts its business in Detroit . . . and throughout the State of

Michigan."  *Adams v. Comerica Mgmt. Co.*, et al., 08-10553 (E.D.  Mich. 2008).

Comerica argues that its answer to *Adams* was erroneous, and should not amount to

judicial estoppel.  The Court agrees.  *Adams* was based on federal question jurisdiction,

and Comerica's citizenship was not material to the outcome of the case; this is not

grounds for estoppel.

Lastly, Defendants note that Comerica used the words "principal offices" in its

complaint,  instead of "principal place of business."  (Compl. ¶ 1.)  Defendants contend

that unless Comerica amends the complaint, jurisdiction cannot exist; in support, they

cite *Poly-Flex Constr., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, No. 1:07-cv-1090, 2008 U.S.

Dist. LEXIS 22970 (W.D. Mich. Mar. 24, 2008) (unpublished).  The Court disagrees.  In

*Poly-Flex*, the court dismissed the complaint *sua sponte*, because the plaintiff failed to

even state its principal place of business, and there was absolutely no evidence upon

which to make a determination of citizenship.  *Id.* at *2-3.  Contrary to *Poly-Flex*, this

Court has a fully-briefed motion, with multiple exhibits from both sides, on the issue of

Comerica's citizenship.  Therefore, even if the use of the phrase "principal offices"

rendered the complaint invalid, the Court's ruling on this motion clarifies Comerica's

citizenship and effectively resolves the issue.

Comerica fits the mold of a company whose activities are so diverse and "far-

flung" that its principal place of business is difficult to ascertain.  *See Hertz*, 130 S. Ct. at

1191 (noting that the "'business activities' approach has proved unusually difficult to

apply.").  While it maintains a substantial presence in Detroit, where it originated (Mot.

Ex. E), the company's activities extend far beyond Michigan.  Moreover, due to the

nature of the banking business, the physical location of Comerica's facilities does not

necessarily reflect where it does most of its business.  For instance, by Defendants'

numbers, the majority of Comerica's banking centers are in Michigan, yet most of the

company's income originates elsewhere.

Taking into consideration all the relevant factors, and weighing them in light of

the facts of this case, the Court finds that the evidence supports Comerica's position.

The Sixth Circuit's pre-*Hertz* jurisprudence recognized that, under the total-activity test,

in cases where a corporation's business activities are so spread out that its principal

place of business is hard to determine, the nerve center may be the deciding factor.  In

*Riggs v. Island Creek Coal Co.*, 542 F.2d 339, 342 (6th Cir. 1976), the Sixth Circuit

considered a situation in which the "bulk" of a mining company's operations was divided

in an unknown proportion among several states.  The court stated:

> In such a situation, the corporation's headquarters assumes more
> significance as the compelling factor in the principal place of business test.
> "Where a corporation has more than one mine . . . situated in different
> districts, its office from which supreme direction and control of the
> business generally is had, including the operations of the several plants,
> may, and perhaps must, be deemed the principal place of business."

*Id.* (*quoting Continental Coal Corp. v. Roszelle Bros.*, 242 F. 243, 246 (6th Cir. 1917)).

*Riggs* offers an appropriate solution to the question before the Court.  The data

suggests that Michigan accounts for about half of Comerica's business activities, with

the remainder divided among several other states. If other factors were considered

besides those listed by the parties, perhaps the balance would tilt in one direction or

another, but it is unlikely the results would be conclusive. However, once the

company's nerve center is factored in, the center of gravity shifts definitely away from

Michigan, and towards Texas. For this reason, the Court holds that Comerica's

principal place of business is Dallas, Texas, and the complete-diversity requirement of

28 U.S.C. § 1332(a)(1) is met.

## IV.    CONCLUSION

Defendants' motions to dismiss for lack of subject matter jurisdiction (Dkt. ##4, 6,

10, 18) are **DENIED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 19, 2010

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
May 19, 2010.

s/Carol A. Pinegar
Deputy Clerk